DECISION
On October 19, 1997, several people were gathered at 773 Riverview Drive, an apartment where Carley Horton and Said Hamdi ("Said" or "C-Rock") lived with their infant son. The victim, Edward McCray ("Sammie"), was living with them along with Steve Stefanos, Said's cousin, who was visiting from California. Around midnight, appellant, Aklilu Tesfagiorgis ("AK"), Samuel Asgede and Imanuel Tekie arrived at 773 Riverview Drive to visit with Carley, Said, Sammie and Steve. The men were drinking. Steve eventually borrowed Carley's car and left. Carley went to bed. Close to 3:00 a.m., appellant went outside to smoke a cigarette. A gunshot was heard and Said, Sammie, Samuel and Imanuel went outside to investigate. AK was on the ground and had been shot in the leg and hit in the head with the gun. He was bleeding. Said testified that he went back inside the apartment to call an ambulance. Two more shots were heard. Carley testified that she had gotten out of bed to investigate and Sammie came inside the apartment and was bleeding from the chest. He stumbled and fell. He died within minutes. Said called 911 again. Samuel and Imanuel testified that they ran to the car when they heard the gunshots. AK then called to them as they were running and they helped him to the car. They drove to another friend's apartment, Nehmia's apartment, and then took AK to Riverside Methodist Hospital ("Riverside").
While helping AK into the hospital, a police officer questioned them as to what had happened. The police officer had gone to the hospital to check on the condition of Sammie. Nehmia stopped and told the police officer that AK had been shot at a bar on the east side of Columbus. The police officer testified he found this suspicious because so many hospitals were closer to the east side than Riverside. The police officer went to their car, a station wagon, and looked inside. He saw a live 9mm round in the back of the car. He then called for backup. The police then questioned Carley, Said, Samuel and Imanuel. All four testified at appellant's trial.
Appellant was indicted on one count of murder with a firearm specification. After a trial, the jury found appellant guilty. Appellant filed a timely notice of appeal and raises the following assignments of error:
Assignment of Error One
 THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING INTO EVIDENCE A DYING DECLARATION WITHOUT SATISFYING THE FOUNDATIONAL REQUIREMENT THAT THE DECLARANT WAS POSSESSED OF A SUBJECTIVE BELIEF IN THE CERTAINTY OF HIS DEATH.
Assignment of Error Two
 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Assignment of Error Three
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
By the first assignment of error, appellant contends that the trial court erred by admitting a dying declaration. Carley testified as follows:
Q. What did he [Sammie] do?
 A. He closed the door. He said something. Then he came a little bit close to me and fell onto the floor.
Q. What did he say to you? Take your time.
A. He said, "AK shot me."
Q. So Sammie told you that AK shot him?
A. Yes.
(Tr. Vol. I, 341-342.)
Appellant contends that the trial court erred because the foundational requirement that the declarant was possessed of a subjective belief in the certainty of his death was not satisfied. Defense counsel did not object to the testimony and we must determine whether plain error occurred. Crim.R. 52(B) allows a reviewing court to reverse for error which affects substantial rights but was not preserved as error for appeal. Even though the application of plain error is to be taken with the utmost caution, it is sometimes necessary, under exceptional circumstances, in order to prevent a miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." State v. Franklin (1991), 62 Ohio St.3d 118,128, certiorari denied, Franklin v. Ohio (1992),504 U.S. 960.
Evid.R. 804(B)(2) permits statements made by a declarant who believes that his death is imminent to be admitted as an exception to the hearsay rule as to the cause or circumstances of such death. The rule requires that the declarant be aware that he is near death. The theory behind a dying declaration being an exception to the hearsay rule is that, when faced with impending death, the declarant will utter the truth. State v. Kindle
(1890), 47 Ohio St. 358, 360. Impending death may be inferred from the apparent seriousness of a victim's wounds. State v. Cook
(Dec. 6, 1984), Franklin App. No. 84AP-371, unreported (1984 Opinions 3121, 3123). In Cook, this court found that, if the facts and circumstances create a foundation for the trial court to determine that the victim was aware of impending death, the trial court does not abuse its discretion in admitting the dying declaration, although making this preliminary determination out of hearing of the jury would be a better procedure. Cook, at 3124, citing Colletti v. State (1919), 12 Ohio App. 104.
In this case, Carley testified that Sammie was bleeding, stumbling and appeared to be struggling to close the door. He came closer to her and fell to the ground. She testified that he stated that appellant shot him. Under these circumstances, the trial court could not properly determine that Sammie was aware that death was imminent. Even though he had a mortal wound and his condition at the time was critical, these facts alone form an insufficient predicate to admit the statements as dying declarations. State v. Woods (1972), 47 Ohio App.2d 144, 147. Carley's testimony does not support a finding that Sammie knew death was imminent.
However, even though the statement was inadmissible as a dying declaration, the statement was admissible as an excited utterance. Evid.R. 803(2) provides a hearsay exception for excited utterances, and permits the admission of statements which relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." An excited utterance is an exception to the hearsay rule based on the notion that an excited utterance maintains a high level of reliability. "`This exception derives its guaranty of trustworthiness from the fact that declarant is under such state of emotional shock that his reflective processes have been stilled. Therefore, statements made under these circumstances are not likely to be fabricated." State v. Taylor (1993), 66 Ohio St.3d 295,300, quoting McCormick (2d Ed. 1972) Section 297.
The Supreme Court of Ohio has applied a "reasonableness" standard of review as to the admission of a statement as an excited utterance. In Taylor, at 304-305, the court discussed the standard and quoted Potter v. Baker (1955), 162 Ohio St. 488,499-500, as follows:
 "There may be instances in which a decision to reject such a declaration will appear to a reviewing court almost as reasonable as a decision to admit it; and vice versa. We certainly do not believe that the decision of the trial judge in such an instance should be disturbed.
 "*** [T]he trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision. ***"
See, also, State v. Cornell (July 16, 1998), Franklin App. No. 97APC11-1539, unreported (1998 Opinions 2554).
The Supreme Court of Ohio established a four-part test to determine whether a statement is admissible in the second paragraph of the syllabus of Potter, as follows:
 *** [T]estimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. [Emphasis sic.]
In this case, the four parts of the test are met. Sammie was shot two times, which is an occurrence startling enough to produce a nervous excitement in Sammie, sufficient to still his reflective faculties and thereby make his statements the unreflective and sincere expression of his actual beliefs and, thus, render his statement spontaneous and unreflective; Sammie made the statements within minutes of being shot; Sammie stated who had shot him; and Sammie most likely had an opportunity to see who shot him since he was shot in the chest. Thus, Carley's testimony regarding Sammie's statement was admissible as an excited utterance and the trial court did not err in admitting it. Appellant's first assignment of error is not well-taken.
By the second assignment of error, appellant contends that he was denied the effective assistance of counsel under theFifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 687. In evaluating defense counsel's performance, courts initially presume that properly licensed attorneys perform competently. State v. Lytle (1976), 48 Ohio St.2d 391, 397, vacated on other grounds, Lytle v. Ohio (1978), 438 U.S. 910. A "defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, at 689, quoting Michel v. Louisiana
(1955), 350 U.S. 91, 101. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." State v. Mills (1992),62 Ohio St.3d 357, 370, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227. Counsel need not raise meritless issues. State v.Hill (1996), 75 Ohio St.3d 195.
Appellant contends that there are three instances in which his counsel was ineffective. The first involves the failure to object to Carley's testimony when she related the dying declaration of Sammie. Since we have found that the testimony was admissible, appellant's counsel was not unreasonable nor ineffective for failing to object.
The second instance which appellant contends his counsel was ineffective is that his counsel failed to request a limiting instruction regarding the testimony of Imanuel Tekie. Imanuel testified as the court's witness pursuant to Evid.R. 614(A). Appellant's contention is that the prosecution was permitted to impeach Imanuel by utilizing a videotaped statement of Imanuel to the police which contained damaging evidence against appellant. Since no limiting instruction was given, appellant contends that the danger existed for the jury to use Imanuel's prior statement as substantive evidence of appellant's guilt. Evid.R. 810(D)(1)(a) permits prior inconsistent statements which are given under oath and subject to cross-examination to be admitted for substantive purposes. The inconsistent statement should be used only for impeachment and a limiting instruction given. State v.Dacons (1982), 5 Ohio App.3d 112.
In this case, the statement was made to the police officers, not while under oath or subject to cross-examination, so it could not be used for other than impeachment. In his videotaped statement to the police, which was shown to the jury, Imanuel stated that, although AK's back was to him, he saw AK fire the gun and put it back into his jacket pocket. Imanuel also heard a gunshot. Most of Imanuel's statement was similar to Samuel and Said's testimony. In fact, Imanuel's statement to the police, which placed the gun in appellant's hands, is cumulative of Samuel's testimony. Samuel testified that he saw appellant with a shiny object in his hands which he thought was a gun and, as he was running away, he heard two gunshots. (Tr. Vol. I, 330-331.) Thus, failure to request a limiting instruction as to Imanuel's statement does not rise to the level of ineffective assistance of counsel.
The third instance in which appellant contends his counsel was ineffective is that his counsel failed to request a jury instruction on the lesser included offense of voluntary manslaughter. Trial counsel's "failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." State v.Griffie (1996), 74 Ohio St.3d 332, 333, citing State v. Clayton
(1980), 62 Ohio St.2d 45, 48-49, certiorari denied, Clayton v.Ohio (1980), 449 U.S. 879. Appellant's second assignment of error is not well-taken.
By the third assignment of error, appellant contends that the evidence was insufficient to sustain the judgment of conviction and the judgment was against the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386.
The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437).
 *** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)] 1594. [Thompkins, at 387.]
In this case, although no one testified as to seeing appellant shoot Sammie, there was the testimony of Samuel, Imanuel and Said, each stating the circumstances of the shooting. Imanuel and Samuel each testified that, while Said was telephoning 911, they were running to the car. Only Sammie and appellant were unaccounted for and Sammie was shot in the back. Carley, Said, Imanuel and Samuel all testified that they heard the gunshots. Samuel testified that he saw only appellant with a gun that night. In the station wagon where appellant was riding to the hospital, the police found a live 9mm round. Samuel testified that he saw appellant with a shiny object in his hands which he thought was a gun and, as he was running away, he heard two gunshots. Thus, there is sufficient evidence that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Also, this evidence provides sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. Appellant's third assignment of error is not well-taken.
For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and PETREE, JJ., concur.