The State of Ohio, Appellee, *v.* Woods, Appellant.

[Cite as State v. Woods (1972), 47 Ohio App. 2d 144.]

(No. 1999—Decided March 29, 1972.)

*Mr. Joseph R. Grunda,* prosecuting attorney, and *Mr. Elio P. Zerbini,* for appellee.

*Mr. Lloyd R. Dobbins,* for appellant.

Victor, J. The defendant, Elmer Donald Woods (appellant herein), was charged with the crimes of shooting with intent to kill, one Ronald Hackney, and murder in the second degree, of one Richard Gills. He was tried by a jury and found not guilty of those charges but, in the Gills case, he was found guilty of manslaughter in the first degree. A motion for a new trial was filed and overruled, and Woods was sentenced to the Ohio State Reformatory.

No appeal as of right was taken, but Woods filed an application for postconviction relief, which was denied. Thereafter, he filed a motion for leave to appeal, which was granted by this court.

Defendant asserts that the trial court erred in the following respects:

"1. The court allowed the testimony given by two police officers, whereby they gave statements made by the deceased which neither met the requirements of a dying declaration nor a spontaneous exclamation under the doctrine of res gestae.

"2. The court issued an order refusing to allow the testimony of one Alex Mate, a witness for the defendant, to be presented to the jury for its consideration, which order prevented the defendant from having a fair trial.

"3. Errors of law occurred throughout the trial proceedings by reason of questions and comment by the court in the presence of the jury which were prejudicial to the defendant's rights to a fair trial."

There is sufficient direct evidence to sustain the finding of guilt. However, the defendant denied guilt and had the testimony of witnesses to support that denial. The crucial question concerned the identity of the killer. The evidence complained of in the first assignment of error concerns the testimony of two law enforcement officers who stated that Richard Gills, the victim, told them that he had been shot by "Elmer Woods," (the defendant). This evidence was admitted by the court on the theory that the statements of Gills were "dying declarations."

Gills had been shot in the abdomen during a fight at a local bar. He was taken to St. Joseph's Hospital in Lorain, arriving there about 2:10 a. m., the day of the shooting. He died approximately 22 hours later, the cause of death being from shock and hemorrhage due to a gun shot wound of the abdomen, which tore the left common iliac artery. Before his death, he received 17 pints of blood, which was about twice his normal circulating volume.

After Gills arrived at the hospital, he was examined by one Doctor Kishman, at approximately 2:45 a. m. The following testimony of the doctor describes his condition:

" * * * [T]he patient had gone into complete shock. He was not responding * * * we could not get a blood pressure. His reflexes were almost stopping, and we felt from the beginning that we had a patient who was hemorrhaging. I felt the one way to possibly save this patient was to somehow temporarily at least control the bleeding so we

made an incision in the abdomen and applied pressure on the main blood vessel to try to stop any further bleeding from below that point."

This procedure was performed in the emergency room at approximately 3:10 a. m., and without giving the patient any anesthetic. Doctor Kishman testified that if this emergency incision had not been made, Gills would have lived "a couple of minutes." Gills was then removed to the operating room for further surgery.

Doctor Kishman further testified that while Gills was in a state of shock, he nevertheless was conscious. Gills never made any statements that he thought he was going to die; his main complaints concerned pains in his left leg.

Doctor Kishman was then asked the following question, and gave the following answer:

"Q. And in your professional opinion * * * do you feel or in your professional experience that he[Gills] thought he was going to die?

"A. No, I don't believe so."

Lieutenant Solomon of the Lorain Police Department arrived at the hospital about 2:30 a. m. He testified that he saw Gills in the emergency room, and asked a doctor and a nurse for permission to talk to him. He received their permission, and when he called the name "Ricky," Gills opened his eyes. Solomon asked: "What happened," and Gills responded: "I got shot." Solomon asked: "Who shot you?" and Gills said: "Elmer Woods." When asked where it happened, Gill said: "At Shullick's."

Solomon was of the opinion that Gills was unconscious until he aroused him by addressing him as "Ricky."

Deputy Sheriff Robert Figler arrived at St. Joseph's Hospital at 2:44 a. m., and, accompanied by Solomon, went to the emergency room. Figler testified:

"A. I asked him who shot him.

"Q. And did he answer you?

"A. Yes, he did.

"Q. And what was his answer?

"A. He said, 'Elmer Woods.' "

It was shortly after Gills made the statement to Figler that the emergency incision was made. The only evi-

dence in the record before us indicating Gills' state of mind was a statement made by him to one Ronald Hackney that "he was hurt bad," and his complaints to the doctor concerning pain in his left leg.

Dying declarations are admissible in evidence as an exception to the hearsay rule, in a prosecution for homicide, when the death of the declarant is the subject of the charge and the circumstances of the death are the subject of the declarations. 40 American Jurisprudence 2d 615, Homicide, Section 347.

In order for declarations of the deceased to be admissible in evidence as dying declarations, 'it is essential * * * that it should be made to appear to the court, by preliminary evidence, not only that they were made in *articulo mortis* [at the point of death], but also made under a sense of impending death, which excluded from the mind of the dying person all hope or expectation of recovery." *Robbins* v. *State*, 8 Ohio St. 131. Hence, the condition of the mind of the declarant at the time of his declarations is decisive. 27 Ohio Jurisprudence 2d 689, Homicide, Section 144; 40 American Jurisprudence 2d 629 and 641, Homicide, Sections 366 and 381; 5 Wigmore, Evidence (Chadbourn rev. 1974), Section 1440.

In our judgment, the record does not support the view that on the two occasions that Gills stated that Woods shot him, he sensed that death was impending and had abandoned all hope of recovery. It is true that the wound was mortal and that his condition at the time was critical. While these circumstances are important, they do not, in and of themselves, form a sufficient predicate to admit the statements as dying declarations. 27 Ohio Jurisprudence 2d 689, Homicide, Section 144. The record is devoid of evidence from which it can be inferred that Gills sensed death and abandoned all hope of recovery. On the contrary, his only complaints concerned pains in his left leg, and the statement that "he was hurt bad."

These facts, coupled with the testimony of the attending physician that he did not believe that Gills thought he was going to die, lead us to the conclusion that the statements were erroneously admitted in evidence as "dying

declarations.'' When we consider the emotional impact that such evidence may have upon a jury, we cannot say that it was harmless.

Moreover, we do not think that the statements were spontaneous declarations, admissible under the doctrine of res gestae.

Furthermore, the trial judge submitted to the jury the question of whether the statements were dying declarations. In this, also, we think that he erred. Matters pertaining to the competency and admissibility of the declarations are questions of law solely for the trial judge. When such declarations have been properly admitted in evidence, the weight and credibility to be given to such declarations are the only questions for the jury. *Robbins* v. *State, supra;* 27 Ohio Jurisprudence 2d 693, Homicide, Section 148; 40 American Jurisprudence 2d 635, Homicide, Section 374; 5 Wigmore, *supra,* at Section 1451. (We recognize that a contrary rule appears to have been declared in *Martin* v. *State,* 17 C. C. 406.)

The first assignment of error is well taken.

In our judgment, the court should have granted the defendant the right to attempt to impeach the testimony of the witness, Lee Keller, by one Alex Mate. However, we think that the court's refusal in this regard was not prejudicial, and, therefore, we reject the second assignment of error.

The trial was long and hotly contested. At times, the patience of the trial judge was sorely strained; comments were made by him that, upon reflection, he probably would not otherwise have made. However, we find no error here. The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

DOYLE, P. J., and BRENNEMAN, J., concur.