[Cite as *State v. Everson*, 2016-Ohio-87.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 128 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| REGINALD EVERSON | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 08 CR 429

JUDGMENT: Affirmed in part. Vacated in part. Remanded.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. Douglas A. King
Hartford, Dickey & King Co., LPA
91 West Taggart Street
P.O. Box 85
East Palestine, Ohio 44113

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: January 6, 2016

WAITE, J.

{¶1} Appellant Reginald Everson appeals his convictions for aggravated murder and having a weapon while under a disability. The charges arose from a drive-by shooting in Youngstown that resulted in the death of Terrell Roland. The case went to jury trial, except for the weapons under disability charge, which was bifurcated and tried in a bench trial. Appellant was convicted on both charges and sentenced to 38 years to life in prison. Appellant raises twelve assignments of error. In his first and second assignments he challenges the court's decision to admit various types of hearsay evidence at trial. The record indicates that the trial court improperly admitted a statement from the victim as a dying declaration, but the error is harmless because it could have been admitted as an excited utterance. The trial court also allowed impermissible hearsay testimony confirming that Appellant drove a black Buick Regal during the drive-by shooting, but this is likewise harmless as it did not affect the outcome of the trial. In Appellant's ninth assignment of error he alleges that the court did not have jurisdiction to conduct a bench trial on the weapons under disability charge because he did not waive jury trial on that count. There is no waiver of a jury trial in the record. Therefore, we sustain his ninth assignment of error. Appellant's conviction and sentence on count two in the indictment, having a weapon while under disability, R.C. 2923.13(A)(2)(b), are vacated and remanded for further proceedings. The conviction and sentence for aggravated murder and the accompanying gun specification are affirmed.

## Background

**{¶2}** On March 30, 2008, Terrell Roland ("Terrell") was shot and killed outside his mother's home at 117 East Avondale in Youngstown, Mahoning County, Ohio. He was 18 years old. Terrell was sitting on the driveway next to his friend Mickele Glenn ("Glenn") when someone in a black vehicle drove by and shot him. Glenn ran inside the house and told the victim's mother, Carol Roland ("Carol"), about the shooting and she ran outside. Terrell told his mother that "Reg shot me," and he asked her to call 911. Terrell then lost consciousness and was unresponsive when police arrived. He died later that evening at the hospital.

**{¶3}** Youngstown Police Officers Kelly Lamb and Robert DiMaiolo were two of the officers who responded to the shooting. Officer Lamb determined that Glenn had witnessed the shooting and she placed him in Officer DiMaiolo's cruiser. Glenn initially stated that he had not seen the crime, but admitted he was a witness after being placed in the police cruiser. He identified the shooter as a man he knew named "Reg," and he gave a description of the car used in the shooting: a black, four-door Buick Regal. He did not know Reg's last name. Glenn told Officer DiMaiolo that Reg lived at 114 West Chalmers Avenue in Youngstown. Officer DiMaiolo took Glenn to the police station for further questioning and asked Officer Michael Quinn to investigate the 114 West Chalmers Avenue address. Officer Quinn went to the location and spoke with Marion Everson, Appellant's uncle, who stated that Appellant lived with him and had access to a black Buick Regal.

**{¶4}** It was later determined that Glenn and the victim were friends, and they both knew Appellant. On the afternoon of the shooting, Glenn was at 117 East Avondale to get his hair cut. He was wearing a bullet proof vest and was carrying a

firearm because of a feud he was having with one of Appellant's cousins. He was standing outside the house in the driveway and Terrell was sitting next to him when a black Buick Regal drove up to the house and stopped. Shots were fired from the vehicle and hit Terrell. Glenn recognized the shooter as Reg and saw that there was no one else in the vehicle. He later picked Appellant out of a photo array as the person who shot Terrell.

**{¶5}** On April 10, 2008, Appellant was indicted in the Mahoning County Court of Common Pleas. He was charged with aggravated murder, R.C. 2903.01(A)(F), with an accompanying specification due to the fact that the crime took place by discharging a weapon from a motor vehicle (commonly known as the "drive-by" specification, R.C. 2941.146(A)). He was also charged with having a weapon while under disability, R.C. 2923.13(A)(2)(b), a third degree felony. On April 23, 2008, he was arraigned and pleaded not guilty. On April 7, 2009, Appellant filed a motion in limine to prevent Carol Roland from testifying about her son's statement that "Reg shot me." That motion was denied July 8, 2009. On February 10, 2011 Appellant filed another motion in limine related to the victim's statement. That was also overruled on May 25, 2011.

**{¶6}** Appellant filed a motion to bifurcate count two, the weapons under disability charge, and the motion was granted on October 11, 2011. On June 12, 2012, Appellant filed, for a third time, a motion to suppress the victim's statement, which was denied on June 20, 2012. On June 14, 2012 Appellant filed a motion in limine to suppress all testimony other than that of Glenn, alleging that the state told the grand jury "[Glenn] was the only witness in this cause." Appellant claimed that

judicial estoppel prohibited the state from calling any other witnesses. This motion was overruled on June 20, 2012.

**{¶7}** Mickele Glenn and Carol Roland testified at trial, as did a number of police officers who were involved with the case. Dr. Joseph Ohr, Mahoning County Deputy Coroner and Forensic Pathologist, testified at trial that the victim died from a gunshot wound to the abdomen.

**{¶8}** On June 28, 2012, Appellant was found guilty of aggravated murder as well as the firearm specification. On July 9, 2012, in a separate judgment entry following a bench trial, the court found Appellant guilty of possessing a weapon while under disability. On July 12, 2012, Appellant was sentenced to an aggregate term of 38 years to life in prison, including 30 years to life for aggravated murder, 5 years for the gun specification, and 3 years for having a weapon under a disability, all to be served consecutively. This timely appeal followed.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR BY ALLOWING INTO EVIDENCE THE OUT OF COURT STATEMENT OF THE VICTIM "REG SHOT ME" IN VIOLATION OF THE CONFRONTATION CLAUSE SET FORTH IN THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

**{¶9}** Appellant contends that the statement made by the victim to his mother that "Reg shot me" is hearsay and violates the Confrontation Clause of the Sixth Amendment of the United States Constitution. The Confrontation Clause states that

"[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."  "Admission or exclusion of evidence is within the sound discretion of the trial court to determine and this court will not reverse that decision absent an abuse of discretion."  *State v. Jackson*, 7th Dist. No. 99-BA-9, 2001-Ohio-3222, *2, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989).  An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  When applying this standard, an appellate court may not substitute its own discretion for that of the trial court.  *Id.*

{¶10} Hearsay is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Hearsay evidence is generally prohibited at trial.  Crim.R. 802.  Nevertheless, Evid.R. 803 sets forth 23 exceptions to the hearsay rule.  Evid.R. 804 lists more exceptions, including what is commonly called the "dying declaration."  This hearsay exception is defined in Evid.R. 804(B)(2) as follows:  "In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death."

{¶11} To be a valid dying declaration, the statement must be made not only " '*in articulo mortis* [at the point of death], but also made *under a sense of impending death*, which excluded from the mind of the dying person all hope or expectation of recovery.' "  (Emphasis sic.)  *State v. McGee*, 7th Dist. No. 07 MA 137, 2009-Ohio-

6397, ¶33, quoting *Robbins v. State*, 8 Ohio St. 131 (1857); *see also, State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189, ¶41 (1st Dist.), *appeal not allowed*, 2014-Ohio-566, 138 Ohio St.3d 1414, 3 N.E.3d 1216.  We have held that:  "The state of mind of the declarant at the time of his declarations is decisive."  *State v. Ross*, No. 96 C.A. 247, 1999 WL 826223, at *4 (7th Dist.).

**{¶12}** The severity of the victim's wounds cannot be used in and of itself as sufficient evidence that the victim was aware of impending death and had lost all hope of recovery.  *State v. Woods*, 47 Ohio App.2d 144, 147, 352 N.E.2d 598 (9th Dist.1972).  If the wounds alone could establish the state of mind of the victim, the need for proof of the victim's state of mind would be effectively eliminated as a factor in a dying declaration because such wounds are invariably fatal.

**{¶13}** Whether or not a statement qualifies as a dying declaration is based on the specific facts and circumstances of each case, but there are some common fact patterns when dying declarations are at issue.  Often, there are direct statements from the victim that express his or her state of mind.  Although we have noted that we do not require any specific words indicating the victim's belief that all hope of survival is lost, there are many situations in which the victim does state a clear belief that death is imminent.  *State v. Dillard*, 7th Dist. No. 09 CO 28, 2012-Ohio-2716, ¶38.  In *Dillard*, the victim, Jamie Farley, was shot twice in the chest.  We analyzed the facts and circumstances as follows:

The record in this instance reflects that the victim was shot, retreated to the car in pain, and struggled to get in.  When the car began to turn, the victim's door swung open and he fell out into the street, where he was

unable to move. He told his girlfriend repeatedly, "[b]aby, I'm dying." (Tr. Vol. V, pp. 977-980.) When a witness arrived to help, the victim said "[m]an, I think I'm going to die." (Tr. Vol. III, p. 546.) When Officer Eisenhart arrived, the victim told her he could not breathe and that he had been shot by Appellant. (Tr. Vol. III, p. 440.) The timeline in the record shows that all of this occurred in the space of a few minutes. It is not necessary that the decedent utter the precise words "I believe I am dying" or "this is my dying declaration," however, here the record clearly shows that the victim said precisely these words. Where the victim is shot twice in the chest, is bleeding from both wounds, is unable to lift himself or help others to do so and as a result lays in the middle of the street struggling to breathe, having told those around him he believes he is going to die, the trial court's decision to admit his statement to the responding officer is plainly reasonable. In fact, this scenario appears to present a textbook example of a dying declaration.

*Id.* at ¶39.

**{¶14}** There are many similar Ohio cases. For example, in *State v. Phelps*, 10th Dist. No. 14AP-4, 2015-Ohio-539, the victim suffered multiple gunshot wounds and was considered by the treating paramedic to be in critical condition and showing signs of shock. The victim was moaning with pain and was having difficulty breathing. Nevertheless, the victim was able to tell the paramedic, "[p]lease don't let me die." *Id.* at ¶31. The victim then stated that he had been shot by "Twan," a nickname for the defendant, Antwan Phelps. *Id.* The statement was accepted as a

dying declaration based on the clear indication that the victim thought his wounds were mortal, along with the other facts surrounding the shooting.

{¶15} In *State v. Conley*, 10th Dist. No. 10AP-227, 2010-Ohio-5715, the victim, Jesse Lanier, had been shot three times, including twice in the chest. Two men nearby came to his aid. They observed that he was very upset and in a great deal of pain. He asked to call his mother and his girlfriend. He left a voicemail message on his girlfriend's phone telling her he "might not make it" and that "Rodney just shot me[.]" *Id.* at ¶5. He made similar statements to the paramedic who soon arrived in response to the 911 call. The paramedic testified that while en route to the hospital, Lanier appeared to be in shock. Lanier repeatedly expressed surprise at being shot and he identified the shooter. While at the hospital, Lanier said to his father, "Rodney shot me, robbed me, left me for dead." *Id.* at ¶6. His father, an operating room assistant at the hospital, noted that Lanier was unable to say anything further after this because he was placed on life support. Based on all these facts and circumstances, the court accepted the statements identifying the shooter as dying declarations.

{¶16} In our *Ross* case cited earlier, Mark Brown was shot in the arm and the back during an aggravated burglary. A neighbor frightened away the assailants and then asked Brown, "Who did this to you?" *Ross*, 7th Dist. No. 96 C.A. 247, at *1. Brown responded by saying, "I'm not going to make it. Go check on my boys. Go make sure my kids are okay." *Id.* Brown then identified the shooter. The neighbor observed a great deal of blood coming from Brown's chest area and from his mouth. The responding police officer also stated that there was a large amount of blood

coming from Brown's chest and mouth, and that he was in tremendous pain. Brown repeated to the police officer that he was "not going to make it," and again identified the shooter. *Id.* at *5. Brown died soon afterward in the emergency room. These facts qualified the admission of the statements as dying declarations.

{¶17} In the above cases, the victims expressly acknowledged that they believed death was imminent. Even so, other evidence was also presented to support this belief, often in the form of testimony from medical personnel or law enforcement officers who provided information about the severity of the wounds and the likelihood of recovery. In situations where there is no explicit statement from the victim showing a belief in imminent death, even more evidence may be required to establish the victim's state of mind and to support the application of the hearsay exception. Generally, the party attempting to introduce a dying declaration attempts to rely on the severity of the wounds to support the conclusion that the victim must have known he or she was dying. However, as earlier stated, the victim's consciousness of impending death and the loss of all hope of survival cannot be gleaned merely from the severity of the victim's wounds. *Woods*, *supra*. There are a variety of cases in which the victim is shot multiple times or receives other severe injuries and dies soon afterward, but the victim's statements do not qualify as a dying declaration due to lack of evidence of the victim's state of mind.

{¶18} In *State v. Tesfagiorgis*, 10th Dist. No. 98AP-1215, 1999 WL 604118 (Aug. 12, 1999), the victim was standing outside his apartment and was shot multiple times in the chest. He then tried to reenter the apartment. One of the residents of the apartment testified that the victim was bleeding, stumbling and appeared to be

struggling to close the door. The victim came closer to her and he fell to the ground. He then told her the assailant's name. The victim died minutes later. The trial court allowed the statement to be admitted as a dying declaration, but was reversed on appeal. Even under these extreme circumstances, the facts did not clearly reflect that the victim was aware death was imminent. "Even though he had a mortal wound and his condition at the time was critical, these facts alone form an insufficient predicate to admit the statements as dying declarations." *Id.* at *3.

{¶19} In *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099 (2d Dist.), the victim was stabbed between the ears with an ice pick. The metal part of pick broke off and lodged in her brain. Remarkably, she remained conscious after the attack. She told paramedics that Matthews had stabbed her. Officers visited her in the hospital, and although she had a breathing tube and could not speak, she was able to indicate to the officers that Matthews stabbed her after trying to smother her with a pillow. Surgeons were able to remove the ice pick from her brain, but she later died from her injuries. The Second District Court of Appeals concluded that: "[B]eyond the horrific nature of Tomlinson's injury, there is no evidence that she believed she was dying. A grievous wound and the victim's being in critical condition alone are not enough to establish the deceased's sense of impending death." *Id.* at ¶35.

{¶20} In *Woods*, *supra*, the victim was shot in the abdomen, severing an artery. He told two police officers that his assailant was Elmer Woods. He arrived at the hospital in complete shock with severe hemorrhaging. Doctors performed surgery on the victim without anesthesia due to the nature of the wound. One of the

doctors testified that the victim remained conscious but never made any statements that he thought he was going to die. He had told a variety of people that Elmer Woods shot him, but did not also mention that he thought he was dying. Nevertheless, he died 22 hours after the attack. These facts did not satisfy the requirements of a dying declaration: "It is true that the wound was mortal and that his condition at the time was critical. While these circumstances are important, they do not, in and of themselves, form a sufficient predicate to admit the statements as dying declarations." *Woods*, 47 Ohio App.2d at 147.

{¶21} In the instant case, we do not have any statement from the victim regarding his state of mind. Instead, we have only the opinion of the victim's mother, and not a particularly clear opinion:

Q [Prosecutor] Let's back up for a minute. When you get over there, did he appear to be in pain?

A He was -- I mean, I don't know if he appeared to be in pain, but he was like drifting in and out.

Q Of consciousness?

A Yes.

Q Did he appear to be -- this is -- may sound like a silly question, but did he seem to be under the stress of what was going on, of being shot?

A He was just laying there. I mean, what he said came out clear when he said, "Ma, call 911." And then by the time I got over there, that's

when he told me, "Reg shot me." And then he was like his eyes was going back in his head.

Q Okay.

A I just thought he was going to die right then. I don't know.

Q From the way he was acting, did you get the impression that he likewise thought he was going to die? That he was --

A Yes, because I -- I thought he was going to die right there in my face.

(Tr., pp. 299-300.)

**{¶22}** It is beyond question that Carol Roland thought her son was going to die. It is not clear whether Terrell thought his own death was imminent. Twice during this brief period of questioning Carol Roland was asked whether her son was in pain or stress due to the shooting. Her answer was that he was "just laying there." In answer to the question regarding whether Terrell thought he was going to die, Carol Roland stated that she, herself, thought he was going to die. As the many earlier cases cited make clear, it is not the observer's opinion as to imminent death, but the victim's, that is crucial in this analysis. Nothing in this testimony indicates the victim's state of mind, that he had any sense of his impending death, or that he was even suffering pain. The fact that Terrell later died at the hospital does not aid our analysis. For these reasons, we conclude the circumstances do not satisfy the requirements of a dying declaration.

**{¶23}** Hearsay errors, like all other evidentiary errors, are subject to harmless error review. Evid.R. 103(A); Crim.R. 52(A). Unless an error regarding an evidentiary ruling affects a substantial right, it will be deemed harmless and does not

require a reversal of the judgment. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶23. This includes evidentiary errors involving constitutional rights, such as the right to confront witnesses. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177; *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78. The test for harmless error involving constitutional questions is whether the error was harmless beyond a reasonable doubt, meaning that there is no reasonable possibility that the unlawful testimony contributed to the conviction. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

**{¶24}** We must conclude that the error regarding the admission of the dying declaration was harmless because there exists an alternative basis for admitting the victim's statement. It is apparent from the cases reviewed under this assignment of error that these declarations may often be admitted under the hearsay exception for excited utterances, Evid.R. 803(2): "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In order to qualify as an excited utterances, the following factors must be established:

> (1) there was an event startling enough to produce a nervous excitement in the declaran[t], (2) the statement must have been made while under the stress of excitement caused by the event, (3) the

statement must relate to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event. *State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶34 (6th Dist.), citing *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978).

**{¶25}** There is no question that the shooting was an event startling enough to produce nervous excitement in the victim. His statement was given shortly after he was shot, while under the stress of the shooting. As evidence of his stress, he instructed his mother to call 911. The statement identifying the shooter relates to the startling event. Finally, the victim personally experienced the startling event. The elements of the excited utterance exception have been met and this statement could have been admitted at trial as an excited utterance. Therefore, any error in admitting the statement as a dying declaration was harmless. Appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 2

DEFENDANT/APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HIM WHEN THE COURT PERMITTED INADMISSABLE [SIC] HEARSAY TESTIMONY AND WHERE SUCH TESTIMONY WAS NOT HARMLESS BEYOND A REASONABLE DOUBT.

**{¶26}** Appellant contends that the trial court erred when it allowed the state to present testimony from Detective Ramon Cox and Officer Michael Quinn relating to out of court statements connecting Appellant to the crime. Appellant proposes that Det. Cox used hearsay statements to show that the shooter's name was "Reg" and

that this "Reg" was Appellant, whose first name is Reginald. Appellant also argues that Officer Quinn's testimony about Appellant driving a black Buick Regal was inadmissible hearsay since he was only repeating something he supposedly heard from Appellant's uncle. Appellant argues that the statements were made by declarants who were not called to testify at trial and that the statements were offered for the truth of the matters asserted. Appellant contends that the statements were admitted into evidence in error and that the error affected the outcome of the trial. The state, on the other hand, argues that the testimony was not hearsay because it was only used to explain the officers' conduct during the investigation rather than for the truth of matters asserted.

**{¶27}** As stated earlier, hearsay is generally inadmissible at trial absent a recognized exception. Evid.R. 802. "The trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992).

**{¶28}** It is well-established that, where statements are offered into evidence to explain an officer's conduct during the course of investigating a crime, such statements are generally not considered to be hearsay. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶23. "[E]xtrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). "The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. 6 Wigmore, Evidence (Chadbourn Rev.Ed.1976) 267, 268, Section 1772. Additionally, such statements

must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105, 1108 (10th Dist.1987).

**{¶29}** Statements explaining the conduct of a police officer during the course of the investigation "cannot connect the accused with the crime charged." *Ricks* at ¶27. "It is usually possible to explain the course of an investigation without relating historical aspects of the case, and in most cases, testimony that the officer acted 'upon information received,' or words to that effect, will suffice." *Id.* at ¶51, quoting 2 McCormick, Evidence, Section 249, at 193-195 (7th Ed.2013). The more that the statement connects the accused with the crime, the more likely it will be deemed to be a hearsay rather than a non-hearsay explanation of an officer's conduct during an investigation. *State v. Jones*, 1st Dist. No. C-130359, 2014-Ohio-3110, ¶20.

**{¶30}** Appellant first argues that a statement made by Det. Cox regarding the manner in which he connected the name "Reg" with Appellant's name "Reginald" was inadmissible hearsay. Det. Cox testified that, on the date of the crime, he interviewed Mickele Glenn. Glenn had already testified that he was present when the crime occurred, knew the shooter as someone named "Reg," and knew where Reg lived. After interviewing Glenn, Det. Cox tried to clarify the full name of the person named "Reg" by questioning the officers who were called to the scene of the crime. (Tr., p. 483.) Those officers told Det. Cox that they spoke to someone at the residence who said that "Reg" was "Reginald" Everson. (Tr., p. 483.) Thus, the testimony that Appellant finds objectionable is that someone (not identified in the record) told police officers that the name "Reg" referred to the name "Reginald Everson."

{¶31} We do not find any error in the way that the officers testified as to their investigation of the person identified by the name "Reg." The actual evidentiary connection between "Reg" and Appellant came from Glenn's testimony, not from Det. Cox or any other police officer. The information relayed by Det. Cox does not actually connect Appellant with the crime, but only clarifies his full name. It does not add incriminating evidence to the record above and beyond what had already been stated by Glenn. Further, it was Glenn who actually identified Appellant as the shooter from a photo lineup.

{¶32} Questions are raised, though, regarding the testimony of Officer Quinn regarding the black Buick Regal. Officer Quinn testified that he spoke to Appellant's uncle, Marion Everson, at 114 West Chalmers, and that Mr. Everson told him that Appellant had access to a black Buick Regal. (Tr., p. 472.) Marion Everson did not testify at trial. Appellant's counsel objected to this testimony as hearsay, but the court allowed the testimony on the grounds that it was not being offered for the truth of the matter asserted and was only offered to explain what happened procedurally during the investigation. (Tr., pp. 471-472.) The court allowed Officer Quinn to relate Marion Everson's statement about the black Buick Regal only after the prosecutor stated that another officer, Det. Cox, would later testify as to the ownership of the black Buick Regal. (Tr., p. 470.) Det. Cox never presented any testimony about the ownership or use of a black Buick Regal, although he did make some rather vague statements about verifying the type of vehicle Appellant drove. (Tr., p. 487.) Marion Everson's hearsay statement became substantive evidence that Appellant drove a black Buick Regal. There is almost no other substantive independent evidence

regarding the black Buick Regal in this record, other than from Glenn. The victim's mother testified that her son mentioned a black car, but she did not specify a make or model.

**{¶33}** Despite the questionable admission of Quinn's testimony about the black Buick Regal, we cannot conclude that this error rises to the level of reversible error. The identity of the vehicle as black or as a Buick Regal was not an essential element of the case. Its identity only helped to support the other evidence identifying Appellant as the shooter. There is some evidence, apart from Quinn's testimony, connecting Appellant to the black Buick Regal. Therefore, Quinn's testimony was harmless and Appellant's second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR BY EXCLUDING RELEVANT AND PROPER CROSS EXAMINATION EVIDENCE.

**{¶34}** The trial court denied Appellant's motion in limine to include extrinsic evidence from the autopsy report that Terrell Roland, the victim, had the drug Tramadol, an opiate painkiller, in his system at the time of the shooting. Appellant sought to introduce this evidence to discredit the statement of the victim that was admitted as evidence. Appellant wanted to show that Terrell had a diminished capacity to observe what was going on around him due to his drug use, and that his statement should not be believed. Appellant argues that the exclusion of this

evidence at trial violated his Sixth Amendment right to confrontation and was in violation of Evid.R. 608(B).

**{¶35}** Evid.R. 608(B) deals with the character for truthfulness of a witness. Extrinsic evidence of specific instances of a witness's conduct may not be admitted unless it is "clearly probative of truthfulness or untruthfulness[.]" Evid.R. 608(B). Drug use does not necessarily affect a witness's character for truthfulness. *Dellenbach v. Robinson*, 95 Ohio App.3d 358, 376, 642 N.E.2d 638 (10th Dist.1993).

**{¶36}** Appellant cites *Johnson v. Knipp*, 36 Ohio App.2d 218, 304 N.E.2d 914 (9th Dist.1973), in support. *Johnson* involved a personal injury matter and does not support Appellant's argument. *Johnson* held that "in a case of admitted liability in tort, where the plaintiff calls the defendant for cross-examination, the plaintiff may not attack defendant's credibility by evidence of alcoholic consumption or intoxication." *Id.* at 223. It is unclear how Appellant relies on this holding to prove that he should have been permitted to attack the victim's credibility by reference to possible drugs in his system. Appellant's third assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR BY ADMITTING THE 911 RECORDINGS UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY EXCLUSION RULE.

**{¶37}** Appellant argues that the trial court erred by admitting the transcript of the 911 call made by Carol Roland and others immediately after the shooting. Appellant contends that the 911 calls are out-of-court statements that violate his right to confront the witnesses against him. Appellant contends that under the recent line

of cases interpreting the Sixth Amendment Confrontation Clause starting with *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), hearsay exceptions cannot be used to thwart the right to confront witnesses. Appellant argues that, under *Crawford*, the Confrontation Clause prohibits the government from introducing any out-of-court "testimonial" evidence against a criminally accused defendant unless the witness is unavailable and unless there has been a prior opportunity for cross-examination. Appellant argues that any attempt by the state to rely on an exception to the hearsay rules cannot be sanctioned because, under *Crawford*, hearsay exceptions do not apply when testimonial evidence is at issue.

**{¶38}** The state argues that the 911 recordings are nontestimonial, and therefore, do not fall under the stricture imposed by *Crawford*. In *Crawford* the United States Supreme Court conducted an exhaustive historical analysis of the Confrontation Clause, and reasoned that it applies only to "witnesses," meaning those who " 'bear testimony' " against the accused. *Crawford* at 51. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* The court concluded that only testimonial statements implicate the Confrontation Clause. A statement is testimonial when it is made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable

declarant's expectations." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

**{¶39}** The U.S. Supreme Court, in two later cases decided together, provided further insight into what statements are considered "testimonial." *See Davis v. Washington* and *Hammon v. Indiana,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed. 2d 224 (2006). Both cases direct us to view statements objectively when considering whether they implicate *Crawford*. The Court explained: "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the *primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency." (Emphasis added.) *Id.* at 822.

**{¶40}** *Davis* held that statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 814. The Court specifically stated: "[A] 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.* at 827.

**{¶41}** There are four factors to consider in deciding whether or not a statement is testimonial:

> (1) whether the speaker was speaking about current events as they were actually occurring, requiring police assistance, or was he or she describing past events; (2) whether a "reasonable listener" could conclude that the speaker was facing an ongoing emergency that

required help; (3) whether the officer's questions were tailored to resolve an emergency, rather than simply learn what happened in the past; and (4) whether the interrogation was formal; the greater the formality, the more likely it was testimonial.

*State v. Pettway*, 8th Dist. No. 91716, 2009-Ohio-4544, ¶74.

**{¶42}** Here, the ongoing emergency was the shooting of Terrell Roland, who was still bleeding in the driveway while his shooter was somewhere in the area. The primary purpose for the 911 calls was to get emergency services dispatched in order to deal with the current ongoing emergency, not to give information that would later be used in a prosecution. Looking objectively at the situation: (1) the callers were describing an ongoing situation that required police assistance as the shooter was still at large; (2) a reasonable listener could conclude that the speaker was facing an ongoing emergency that required help; (3) the 911 dispatcher's questions were tailored to resolve an ongoing emergency, not to gather facts of what happened in the past; and (4) it was not a formal interrogation. Therefore, the 911 calls were nontestimonial and were admissible.

**{¶43}** There is no evidence that the primary purpose of the 911 calls was anything other than to report an emergency. Thus, the calls were nontestimonial and are not prohibited by *Crawford*. The remaining question is whether they qualify as excited utterances under Evid.R. 803(2). As explained earlier, an out-of-court statement may qualify under the excited utterance exception if there was a startling event producing nervous excitement in the declarant, if the statement was made while under the stress of the event, if the statement relates to the startling event, and

if the declarant had an opportunity to personally observe the event. *State v. Boles*, *supra,* 190 Ohio App.3d 431, at ¶34. The 911 calls in issue satisfy these four requirements and are admissible. Appellant also objects to the foundation laid by the state for admitting the transcript of the 911 calls, but provides no rule, law, or case that reveals any error in the way the transcript was admitted. Absent Appellant presenting some legal basis to the contrary, we cannot find any error in the state's method for introducing the transcript into the record. Appellant's fourth assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 5</u>

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR WHEN IT PERMITTED THE INTRODUCTION INTO EVIDENCE OF THE AUTOPSY REPORT AND/OR THE TESTIMONY OF DR. OHER AS THE SAME WAS IN VIOLATION OF THE DEFENDANT/APPELLANT'S RIGHTS UNDER THE CONFRONTATION CLAUSE THAT IS SET FORTH IN THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶44}** Appellant urges that it was error to allow the testimony of Dr. Ohr, a forensic pathologist, medical examiner, and deputy coroner for Mahoning County. Dr. Ohr offered his expert opinion as a substitute witness in this case. He reviewed the work done by the original autopsist and gave expert testimony based on the findings of the original autopsist. He reviewed the autopsy report, the photographs taken by the original pathologist, the surgical report of the surgeons tending Terrell's

wound, a packet from St. Elizabeth's Health Center containing all records pertaining to Terrell, and the death certificate.

**{¶45}** Appellant cites *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2714-15, 180 L.Ed.2d 610 (2011), for the proposition that a surrogate witness is not a proper substitute for the analyst who conducted a blood-alcohol test for purposes of the Sixth Amendment's Confrontation Clause. However, the Ohio Supreme Court has dealt with a matter more clearly on point in *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930. *Maxwell* involved the precise issue raised by Appellant: whether a substitute examiner may testify as to his or her own expert opinions and conclusions regarding the autopsy of a person's death. Appellant here raises very similar arguments to those raised by *Maxwell*: (1) whether a defendant has a right to confront the medical examiner who actually performed the autopsy and wrote the report, rather than a surrogate, such as an assistant medical examiner; (2) whether the autopsy report itself is a testimonial declaration subject to the confrontation clause; and (3) whether the opinion of the surrogate is offered for the truth of the matter asserted, making it inadmissible hearsay. The Ohio Supreme Court answered in the negative to each of these questions. *Id.* at ¶27-65.

**{¶46}** Only propositions two and three need be addressed here, as they dispose of the first question. In *Maxwell*, the Ohio Supreme Court concluded that an autopsy report was a nontestimonial business record and that its admission did not impinge on a defendant's confrontation rights. *Id*. at ¶54, citing *State v. Craig,* 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶81-88 (applying *Crawford v. Washington*). "[G]enerally, autopsy reports are neither (1) prepared for the primary

purpose of accusing a targeted individual nor (2) prepared for the primary purpose of providing evidence in a criminal trial. For Sixth Amendment purposes, it is only the *primary* purpose of a document that determines whether it is testimonial or not." (Emphasis sic.) *Maxwell* at ¶62. Therefore, since an autopsy report is neither prepared for the primary purpose of accusing an individual nor for providing evidence in a criminal trial, it is nontestimonial and is admissible into evidence at trial as a business record pursuant to Evid.R. 803(6). Thus, it does not violate Appellant's Sixth Amendment right to confrontation.

{¶47} The next question is whether the testimonial statements made by Dr. Ohr were impermissible hearsay. In *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), the Supreme Court held that expert testimony from a forensic specialist did not violate a defendant's right to confrontation. In *Williams*, an expert witness testified about the findings of a DNA test in which she did not participate. "[T]he out-of-court statements were related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion relied and were not offered for their truth." *Maxwell* at ¶42, citing *Williams*, 132 S.Ct. at 2240-2241.

{¶48} Similarly, the statements made by Dr. Ohr were not impermissible hearsay. Dr. Ohr's statements were based on his own review of the available evidentiary records, such as the autopsy report. Evid.R. 703 states, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Since the autopsy report was properly admitted into evidence, Dr. Ohr was able to rely on it as the basis of his opinion. *State v. Jones,* 9 Ohio St.3d 123, 459 N.E.2d 526 (1984).

Dr. Ohr testified to his own conclusions rather than simply parroting the evidence already admitted and contained in the reports. Finally, Dr. Ohr was available to be cross-examined at trial.

**{¶49}** We find no error in the admission of Dr. Ohr's expert testimony, and Appellant's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 6

DEFENDANT/APPELLANT WAS DENIED DUE PROCESS OF LAW AND EQUAL PROTECTION UNDER THE LAW WHEN THE TRIAL COURT FAILED TO RENDER A DECISION WITH REGARD TO THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EYEWITNESS IDENTIFICATION TESTIMONY, SAID MOTION TO SUPPRESS BEING BASED UPON THE DEFENDANT/APPELLANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO COUNSEL UNDER THE UNITED STATES CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶50}** Appellant filed a motion to suppress the photo array identification of Appellant by Glenn. The trial court did not explicitly issue a decision on this motion. Appellant now argues that this failure to issue a decision violated Appellant's Fourteenth Amendment right to Due Process.

**{¶51}** When a trial court declines to rule on a motion but renders final judgment on the matter, an appellate court presumes that the trial court overruled the

motion *sub silencio*. *State v. Crooms*, 7th Dist. Nos. 11 CO 17, 12 CO 9, 2014-Ohio-2928, ¶18; *State v. Lawson*, 9th Dist. No. 21227, 2003-Ohio-1299. Therefore, we conclude that the trial court overruled Appellant's motion. Appellant's alleged due process error is the failure to actually rule on the motion, but there can be no error because of the presumption that the motion was overruled.

{¶52} Even if we accepted Appellant's interpretation, there are further problems with his argument. Appellant failed to file several hearing transcripts related to the motion to suppress. These include hearings from July 1, 2009, August 6, 2009, June 18, 2010, and April 5, 2011. Without transcripts, we cannot review the questions implicit in Appellant's assignment of error. When a party fails to file a transcript necessary to review a matter on appeal, the reviewing court will overrule the assignment of error and affirm the trial court judgment. App.R. 9(B); *State v. Kimbrough*, 7th Dist. No. 08-MA-187, 2009-Ohio-6875, ¶45.

{¶53} Finally, for a photo array to be admissible it must not be unnecessarily or unreasonably suggestive. *State v. Brown*, 38 Ohio St.3d 305, 310, 528 N.E.2d 523 (1988), citing *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). If the photo array is not unreasonably suggestive, it does not violate due process. There is no evidence before us that any of the police practices were unreasonably suggestive as to render Glenn's identification unreliable under the totality of the circumstances. Glenn knew Appellant personally prior to the shooting and was able to identify Appellant both prior to and at trial. Appellant's sixth assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 7</u>

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR WHEN IT ALLOWED THE TESTIMONY OF MICKELE GLENN IN VIOLATION OF THE DOCTRINE OF JUDICIAL ESTOPPEL.

**{¶54}** Appellant argues that the conviction should be reversed because the prosecutor presented witnesses other than Mickele Glenn at trial. Appellant argues that the prosecutor stated at some unspecified point in a grand jury proceeding that Glenn was the only witness in this case. Appellant concludes that, under the doctrine of judicial estoppel, the prosecutor was prohibited from taking a contrary position during trial by calling any other witnesses, and that the only witness that should have been permitted was Glenn. Appellant is mistaken in his conclusion.

The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. Courts apply judicial estoppel in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position then arguing the opposing to suit an exigency of the moment. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. Courts have applied this doctrine when inconsistent claims were made in bankruptcy proceedings that predated a civil action.

(Internal citations and quotations omitted.) *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, ¶17, citing *Greer-Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442.

**{¶55}** This assignment of error is overruled on multiple grounds. Aside from Appellant's failure to indicate where in the record this alleged statement took place, Appellant acknowledges, but then completely disregards, the fact that judicial estoppel does not apply in criminal cases.

> [T]his Court could not find, an Ohio criminal case in which this doctrine has been applied. To the contrary, this doctrine has been rejected by Ohio courts in criminal cases. See *State v. Nunez,* 2d Dist. No. 21495, 2007-Ohio-1054 (rejecting the State's argument that Nunez was judicially estopped from challenging his sentence pursuant to *State v. Foster); State v. Burgess,* 2d Dist. No. 21315, 2006-Ohio-5309 (rejecting the State's argument that Burgess was judicially estopped from challenging his sentence pursuant to *State v. Foster); State v. Garretson* (Dec. 7, 1998), 12th Dist. No. CA98-03-023 (rejecting application of judicial estoppel).

*Cleveland* at ¶18.

**{¶56}** Since this is a criminal case, the doctrine of judicial estoppel is inapplicable. It is equally obvious that any possible discussion about Glenn as the only witness in this case would have signified only that he was the sole living eyewitness to the crime who could testify at trial. This is consistent with the evidence presented at trial. Appellant's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 8

THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR BY FAILING TO INSTRUCT THE JURY THAT THERE [SIC] VERDICT MUST BE UNANIMOUS.

**{¶57}** Appellant argues that the trial judge did not use the word "unanimous" when explaining to the jury that the verdict must be unanimous. Appellant contends that this is a reversible error because it lowered the state's burden of proof. Appellee, on the other hand, contends that the judge properly instructed the jury when the judge charged the jury that, "[a]ll verdict forms must be signed by all members of the jury." (Tr., p. 694.)

**{¶58}** When reviewing a trial court's jury instructions, the proper standard of review whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. DeMastry*, 155 Ohio App.3d 110, 2003-Ohio-5588, at ¶72. An abuse of discretion can only be found if the court's attitude is unreasonable, arbitrary or unconscionable. *Adams*, *supra*, 62 Ohio St.2d at 157.

**{¶59}** "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict. The court must also inform the jury that the jury is the exclusive judge of all questions of fact." R.C. 2945.11. "A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. "A reviewing court must consider the whole charge as given rather than separate portions of a charge." *State*

*v. Grambo*, 82 Ohio App. 473, 75 N.E.2d 826 (2d Dist.1947). Even if a portion of the general charge is misleading, if there is no prejudicial error when looking at the misleading section in light of the entire instruction, the verdict will not be reversed. *State v. Baker*, 92 Ohio App.3d 516, 536, 636 N.E.2d 363 (8th Dist.1993).

**{¶60}** The Eighth District has held that the specific word "unanimous" need not be used to properly instruct the jury when another synonymous word or phrase is used. *State v. Melvin*, 8th Dist. No. 84471, 2005-Ohio-2329, ¶13. In *Melvin*, the appellant argued that the jury instruction was erroneous and in violation of due process under the Fourteenth Amendment.

> Specifically, appellant asserts that the trial court's use of the term "all of you" instead of the term "unanimous" was erroneous in its instruction on voluntary manslaughter should the jury be unable to reach a verdict on murder. However, there is no due process violation nor any confusion because the term "all of you" is synonymous with "unanimous." Thus, appellant's fourth assignment of error is overruled.

*Id.*

**{¶61}** In the instant appeal, the trial judge's instruction contained the phrase "all members of the jury." The court did not abuse its discretion in choosing this phrase over the word "unanimous." Consequently, the jury instruction given by the trial court was acceptable. Appellant's eighth assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 9

> THE DEFENDANT/APPELLANT'S CONVICTION FOR HAVING
> WEAPONS UNDER DISABILITY, COUNT 2 OF THE INDICTMENT,

MUST BE REVERSED BECAUSE THE TRIAL COURT LACKED JURISDICTION TO CONDUCT A BENCH TRIAL ON THAT COUNT ABSENT STRICT COMPLIANCE WITH THE STATUTE MANDATING THAT THE WAIVER OF JURY MUST BE IN WRITING, SIGNED BY THE DEFENDANT, FILED IN THE CRIMINAL ACTION AND MADE A PART OF THE RECORD.

{¶62} The trial court bifurcated count two of the indictment, the charge of having a weapon under disability, at the agreement of both Appellant and the state. Appellant claims that his request to bifurcate was not a waiver of his right to a jury trial on the weapons charge. Appellant acknowledges that there is a judgment entry dated July 9, 2012, which states, "Defendant waived his right to a jury trial on the Having Weapons While Under Disability count only." Appellant denies making such a waiver. Appellant claims that any waiver of jury trial needed to be in writing, and that he never signed a jury trial waiver, regardless of the conclusion of the trial judge.

{¶63} The record indicates that, although Appellant did request bifurcation of the charges, there is no corresponding waiver of jury trial in the record relating to the weapons under disability charge. There is a constitutional right to a jury trial in all criminal prosecutions. U.S. Constitution, Eighth Amendment; Ohio Constitution, Article I, Section 5; Ohio Constitution, Article I, Section 10. The waiver of the right to trial by jury is governed by R.C. 2945.05 and Crim.R. 23. "R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action, made part of the record of the case, and made in open court." *State v. Croom*, 7th Dist. No. 12 MA 54, 2013-Ohio-5682, ¶126. There must be strict

compliance with R.C. 2945.05 for there to be a waiver of the right to a jury trial, and without strict compliance the trial court is prohibited from conducting a non-jury trial. *State v. Pless,* 74 Ohio St.3d 333, 339, 658 N.E.2d 766 (1996). "[I]t must also appear of record that the defendant had waived such right in the manner provided by Section 2945.05, Revised Code, before * * * [there is] jurisdiction to proceed to try the defendant without a jury." *State v. Tate*, 59 Ohio St.2d 50, 54, 391 N.E.2d 738 (1979). Similarly, Crim.R. 23 allows for the waiver of jury trial for serious offenses if the waiver is in writing.

**{¶64}** In *Pless*, the defendant agreed to waive his right to a jury trial in open court in the presence of his attorneys, and the record states that he signed a waiver which was entered into the record. *Id*. at 399. However, the Supreme Court reversed on the ground that there was no evidence that the signed waiver was ever filed and made a part of the record. *Id.* The Supreme Court stated that R.C. 2945.05 was clear and unambiguous as to the requirements for a jury waiver and that substantial compliance was not acceptable. *Id.* at 337, 340.

**{¶65}** The Criminal Rules and the Ohio Revised Code are satisfied by a written waiver, signed by the defendant and filed with the court, and made in open court. Here, there is no signed waiver in the record. Since both R.C. 2945.05 and Crim.R. 23 require strict compliance, we sustain Appellant's ninth assignment of error. The state is not precluded from retrying Appellant on the weapons under disability charge. *State ex rel. Jackson v. Dallman*, 70 Ohio St.3d 261, 638 N.E.2d 563 (1994).

## ASSIGNMENT OF ERROR NO. 10

DEFENDANT/APPELLANT'S CONVICTION IN COUNT TWO IS BASED UPON LEGALLY INSUFFICIENT EVIDENCE AND THEREFORE A DENIAL OF DUE PROCESS.

**{¶66}** Appellant argues that the state failed to present sufficient evidence to prove that he was guilty of a prior violent felony for the purposes of having a weapon under a disability. Because his conviction for having a weapon under a disability is vacated and the case remanded to the trial court, this assignment of error is dismissed as moot.

<u>ASSIGNMENT OF ERROR NO. 11</u>

THE DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶67}** An appellate court may not reverse a verdict on manifest weight grounds unless, after reviewing the entire record, it determines that the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st. Dist.1983). In addition, credibility of the witnesses is primarily a question for the jurors. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶68}** Based on the evidence presented by Glenn, Carol Roland, the various law enforcement personnel, along with the victim's statement, there is substantial evidence, if believed, to support the murder conviction and gun specification. Therefore, Appellant's eleventh assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 12</u>

DEFENDANT/APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS IN THESE PROCEEDINGS.

**{¶69}** Appellant claims that the cumulative errors committed during his trial deprived him of a fair trial and necessitates the reversal of his conviction. Ohio recognizes the doctrine of cumulative error. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal. *Id.* at 196-197, 509 N.E.2d 1256.

**{¶70}** Although the record reflects minor errors occurred at trial, those errors did not dictate the outcome of the case or deprive Appellant of a fair trial. The error regarding the admission of the victim's statement as a dying declaration cannot be treated as relevant to a claim of cumulative error since a valid alternative basis for admitting the statement existed. Any remaining errors, even when considered together, remain harmless. Appellant's twelfth assignment of error is overruled.

Conclusion

**{¶71}** Appellant has alleged twelve errors on appeal. Only one of these assignments of error has merit. In Appellant's ninth assignment he argued that the bifurcated weapons under disability charge should not have been tried to the court in a bench trial because he did not waive his right to jury trial on that charge. As there is no written jury waiver in the record, we agree with Appellant. His ninth assignment

of error is sustained, and the conviction and sentence on count two of the indictment, having a weapon while under a disability, R.C. 2923.13(A)(2)(b), a third degree felony, are vacated and the matter remanded for further proceedings as to that charge. Appellant's tenth assignment of error is moot and his remaining assignments are overruled. The conviction and sentence for aggravated murder, along with the accompanying firearms specification, are affirmed. The trial court judgment is affirmed in part and vacated in part.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.