[Cite as *State v. Taylor*, 2018-Ohio-2921.]

STATE OF OHIO      )            IN THE COURT OF APPEALS
                         )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                             C.A. No.      28746

     Appellee

     v.                                   APPEAL FROM JUDGMENT
                                        ENTERED IN THE
FRED TAYLOR, JR.                       COURT OF COMMON PLEAS
                                         COUNTY OF SUMMIT, OHIO
     Appellant                        CASE No.     CR-2016-07-2358

DECISION AND JOURNAL ENTRY

Dated: July 25, 2018

CALLAHAN, Judge.

**{¶1}** Fred Taylor, Jr. appeals from his convictions in the Summit County Common Pleas Court. This Court affirms.

I.

**{¶2}** On Memorial Day 2016, Mr. Taylor was at a cookout at an apartment complex on Nadia Court in Akron, commonly referred to as the Rosemary Apartments. There were multiple cookouts occurring at the apartment complex that day. The cookout that Mr. Taylor attended included the victim, Javon Knaff, and two witnesses who testified at trial, D.H.-B. and T.O.

**{¶3}** At some point during the evening, D.H.-B. observed Mr. Taylor and Mr. Knaff "bickering" over a cigarette. Later, D.H.-B. saw Mr. Taylor and Mr. Knaff in a group in the parking lot. At that point, Mr. Knaff was talking loudly and there appeared to be "[s]omewhat" of a problem. D.H.-B. testified that she was not paying a lot of attention to the group because she was on her cell phone. But when she heard a gunshot, she looked up. She then saw Mr. Taylor

fire more shots at Mr. Knaff. Mr. Knaff ran around the parking lot screaming, "'I got shot. He tried to kill me.'" When he got to D.H.-B., he fell on her. He was crying as he told her, "'I don't want to die'" and asked her to call his mother. D.H.-B. applied pressure to Mr. Knaff's wounds in an attempt to stop the bleeding.

{¶4}   T.O. testified that 10 to 15 adults attended the cookout. She observed both Mr. Taylor and Mr. Knaff together, but did not see them argue. She was inside preparing plates for children when the gunshots occurred.

{¶5}   Police received the call for shots fired shortly before 8:00 p.m. Officers Christopher Carson, Jeremy Sosenko, Justin Brumbaugh, and Kyle Walter were the first responders to the scene. Officer Sosenko asked Mr. Knaff who shot him. Rather than answer the question, Mr. Knaff "just kept saying[,] 'I'm dying.'" Officer Brumbaugh took over applying pressure to Mr. Knaff's wounds until paramedics arrived. During this time, Mr. Knaff just kept repeating "'don't let me die.'"

{¶6}   An ambulance arrived within minutes. A paramedic testified that Mr. Knaff was alert and oriented. He further testified that, during the ambulance ride, Mr. Knaff appeared scared and anxious and was asking "a lot if he was going to die." The paramedic indicated that the wounds appeared to be life-threatening.

{¶7}   Officer Walter rode in the ambulance to the hospital. Mr. Knaff told him his name, date of birth, and social security number. Mr. Knaff also told Officer Walter, "Fred shot [me]." At the hospital, Mr. Knaff was taken into surgery and died at 9:59 p.m.

{¶8}   That same night, shots were fired at the house of Mr. Taylor's mother. Mr. Taylor fled the state. The next month, Mr. Taylor ran from a traffic stop in West Virginia. When he was

apprehended, he gave police a false name, date of birth, and social security number. Police ultimately uncovered his identity through a photograph and fingerprints.

{¶9}     Mr. Taylor was indicted for murder in violation of R.C. 2903.02(A) ("purposeful murder"), murder in violation of R.C. 2903.02(B) ("felony murder"), felonious assault in violation of R.C. 2903.11(A)(1), felonious assault in violation of R.C. 2903.11(A)(2), and having a weapon under disability in violation of R.C. 2923.13(A)(2). The murder and felonious assault counts also included firearm specifications. Following a jury trial, Mr. Taylor was found not guilty of the purposeful murder charge and guilty of the remainder of the charges. The court merged the felonious assaults and associated firearm specifications into the felony-murder conviction and its associated firearm specification. The court sentenced Mr. Taylor to 15 years to life for murder, 3 consecutive years for the firearm specification, and 3 concurrent years for having a weapon under disability.

{¶10}  Mr. Taylor appeals, raising three assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. TAYLOR BY ADMITTING THE HEARSAY STATEMENT OF THE DECEDENT TO THE JURY.

{¶11}  In his first assignment of error, Mr. Taylor argues that the trial court erred in admitting Mr. Knaff's statement to Officer Walter identifying "Fred" as the person who shot him. Mr. Taylor argues that this statement was (1) inadmissible hearsay and (2) admitted in violation of the Confrontation Clause of the United States Constitution. This Court rejects both arguments because Mr. Knaff's statement was a dying declaration.

**{¶12}** A trial court's evidentiary rulings are usually reviewed for an abuse of discretion, but when the ruling implicates the Confrontation Clause, it is reviewed de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97.

**{¶13}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Subject to certain exceptions, hearsay is inadmissible. Evid.R. 802. One such exception is a dying declaration, which is "a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death." Evid.R. 804(B)(2).

**{¶14}** The Confrontation Clause provides that "the accused shall enjoy the right * * * to be confronted with the witnesses against him." Sixth Amendment to the U.S. Constitution. "Where testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Nonetheless, the United States Supreme Court has "acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted." *Giles v. California*, 554 U.S. 353, 358 (2008), citing *Crawford* at 56, fn. 6. Therefore, the *Giles* court clarified, "the Confrontation Clause requires that a defendant have the opportunity to confront the witnesses who give testimony against him, except in cases where an exception to the confrontation right was recognized at the time of the founding." *Giles* at 357. Historically, unconfronted testimony could be admitted under either a dying declaration exception or the equitable doctrine of forfeiture by wrongdoing. *Id.* at 358-359.

**{¶15}** While both *Crawford* and *Giles* recognize dying declarations as a potential exception to the Confrontation Clause, neither case directly involved a dying declaration. *See*

*Crawford* at 56, fn. 6 ("Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are.") and *Giles* at 538. Similarly, neither the Ohio Supreme Court nor this Court has directly addressed this issue previously. The First, Eighth, and Tenth Districts, however, have found dying declarations are an exception to the Confrontation Clause's requirement that the defendant have a prior opportunity to cross-examine the declarant.[1]

{¶16} The First District has held that "the admission of a statement that qualified as a dying declaration under the common law, including one that is testimonial, does not conflict with the Sixth Amendment and does not implicate *Crawford*." *State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 58. Similarly, the Eighth District has held that "a dying declaration does not implicate *Crawford* and remains an exception to the rule against hearsay." *State v. Duncan*, 8th Dist. Cuyahoga No. 87220, 2006-Ohio-5009, ¶ 23. The Tenth District has also noted that when a declarant's "statements [are] found to be dying declarations, the Confrontation Clause is not implicated in their admission into evidence." *State v. Conley*, 10th Dist. Franklin No. 10AP-227, 2010-Ohio-5715, ¶ 24.

{¶17} Mr. Taylor notes that the applicability of *Crawford* to dying declarations is a matter of first impression for this Court, yet he has cited no authority wherein a dying declaration was excluded as being in violation of the Confrontation Clause. *See* App.R. 16(A)(7). In addition, while the Ohio Supreme Court has not had occasion to directly address this issue, as noted by the First District, "other state supreme courts have expressly held that *Crawford* does not apply to the admission of a statement recognized as a dying declaration under the common

---

[1] The State contends that the Second District has also held that *Crawford* does not apply to dying declarations, citing *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, ¶ 35 (2d Dist.). While the Second District noted, "Dying declarations are one well-established exception to the general rule of excluding hearsay because they are not testimonial in nature," that statement appears to be dictum as the court did not find the declarant made a dying declaration. *Id.*

law, even if it is testimonial." *Kennedy* at ¶ 60 (collecting cases). Moreover, both the United States Supreme Court and the Ohio Supreme Court have found forfeiture by wrongdoing, the other common law exception to the right to confrontation, remains as an exception post-*Crawford*. *McKelton*, 2016-Ohio-5735, at ¶ 96, citing *Giles* at 366. This Court is convinced that they would similarly find that the dying declaration exception also remains. Consequently, this Court joins the courts who have spoken on this issue in holding that the Confrontation Clause is not applicable to dying declarations.

{¶18} When determining whether a statement was a dying declaration, the state of mind of the declarant is decisive. *State v. Woods*, 47 Ohio App.2d 144, 147 (9th Dist.1972). At common law, the necessary state of mind was "'a sense of impending death, which excluded from the mind of the dying person all hope or expectation of recovery.'" *Id.*, quoting *Robbins v. State*, 8 Ohio St. 131, 163 (1857). "The declarant is not required to state that he believes that he will not survive; rather, the necessary state of mind can be inferred from the circumstances at the time of the declaration." *Kennedy* at ¶ 42; *see also Conley* at ¶ 22 (shortly after being shot, declarant asked that his loved ones be called and told his girlfriend he "'might not make it'").

{¶19} Mr. Taylor argues that there was no evidence that Mr. Knaff had a sense of his impending death. Mr. Taylor cites *State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348 (8th Dist.), wherein the court found that the declarant's statements were not dying declarations. The declarant in *Ray* had been shot, but he was steadily improving until he died from meningitis several months later. *Id.* at ¶ 2-3. The court explicitly declined to address whether the declarant believed his death was imminent and focused instead on whether the statements were made "at the point of death." *Id.* at ¶ 41-42, 46. Based on when the statements were made compared to when the declarant died, the court found that the statements were not dying declarations. *Id.*

Even so, the court observed, "testimonial statements under *Crawford* * * * may nevertheless be admissible under one of the two historical exceptions to the Confrontation Clause recognized by the U.S. Supreme Court – forfeiture by wrongdoing and dying declarations." *Id.* at ¶ 37.

{¶20} The fact that the declarant in *Ray* survived for months makes that case different from the present case. "Traditionally, the length of time elapsing between the declaration and death is an element to be considered in whether the statement was under impending belief of death." *Kennedy* at ¶ 49, citing *Mattox v. United States*, 146 U.S. 140, 151 (1892) and *Ray* at ¶ 42. In *Kennedy*, the declarant, who died about 12 hours after the statement, was found to have made a dying declaration. *Kennedy* at ¶ 50. In the present case, the time frame from Mr. Knaff's declaration to his death was less than two hours.

{¶21} Mr. Taylor notes that Mr. Knaff was aware, alert, and oriented while in the ambulance. These facts do not negate Mr. Knaff's belief that his death was imminent. When asked whether Mr. Knaff was aware of the seriousness of his wounds, Officer Walter testified, "I believe he [was]. He was pretty distraught, but he was still able to communicate." Similarly, Officer Sosenko was asked whether he believed that Mr. Knaff believed that he was going to die, and he responded that he did. *Contrast Woods*, 47 Ohio App.2d at 146 (wherein victim complained of pain and doctor testified that he did not believe that the victim thought he was going to die).

{¶22} Multiple witnesses heard Mr. Knaff express his belief that he was dying. After being shot multiple times, Mr. Knaff cried to D.H.-B., "'I don't want to die.'" Officer Sosenko testified that Mr. Knaff repeated several times, "'I'm dying.'" Mr. Knaff also repeatedly said to Officer Brumbaugh, "'don't let me die.'" Mr. Knaff further expressed his belief that he was dying to the paramedic who testified that Mr. Knaff "was asking a lot if he was going to die."

Mr. Knaff's repeated statements concerning the fact that he was dying, coupled with the severity of his condition, demonstrate his awareness of his impending death at the time that he stated, "Fred shot [me]." Consequently, this statement was admissible as a dying declaration.

{¶23} Mr. Taylor's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

MR. TAYLOR'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION AND THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

## ASSIGNMENT OF ERROR NO. 3

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In his second and third assignments of error, Mr. Taylor challenges the sufficiency and manifest weight of the evidence to support his felony-murder conviction and the underlying felonious assault. Mr. Taylor does not challenge his weapons under disability conviction. This Court, likewise, does not address the evidence supporting that conviction.

{¶25} This Court also observes that, despite listing an assignment of error for sufficiency and one for the manifest weight of the evidence, Mr. Taylor has intertwined his arguments concerning the two. Under his purported sufficiency argument, he addresses conflicts in the evidence and makes arguments concerning the weight of that evidence. Moreover, his manifest weight argument primarily refers back to his earlier sufficiency argument.

{¶26} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A sufficiency challenge concerns the State's burden of production at trial. *Id.* at 390 (Cook, J., concurring). A manifest weight challenge, on the other hand, concerns the State's burden of persuasion. *Id.* Although Mr. Taylor failed to properly separate his sufficiency and

manifest weight arguments, this Court has attempted to untangle his arguments in order to address them. *But see State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 19 (declining to address manifest weight argument that merely referred back to sufficiency argument).

**{¶27}** A sufficiency challenge presents a question of law and, therefore, is reviewed de novo. *See Thompkins* at 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

**{¶28}** A manifest weight of the evidence challenge addresses whether the greater amount of credible evidence supports one side over the other. *Thompkins* at 387. When an appellant brings a manifest weight of the evidence challenge,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In conducting such a review, the appellate court essentially acts as a "'thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court's grant of a new trial on manifest weight of the evidence grounds is reserved for "exceptional cases where the evidence weighs heavily against the conviction." *Otten* at 340.

{¶29} Mr. Taylor was convicted of felony murder in violation of R.C. 2903.02(B). That statute prohibits "caus[ing] the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B). The underlying felony was felonious assault. Felonious assault is "knowingly * * * [c]aus[ing] serious physical harm to another * * * [or c]aus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A).

{¶30} As it pertains to the sufficiency of the evidence, Mr. Taylor does not dispute the fact that Mr. Knaff died as a result of his gunshot wounds. He argues that the only witness who testified to directly seeing the shooting was D.H.-B. He notes that T.O. came outside after she heard the shots fired, and that she did not observe an argument between Mr. Taylor and Mr. Knaff. He further argues that Officer Walter's testimony that Mr. Knaff stated that "Fred shot [me]" should have been excluded. Finally, he points out that there was no DNA evidence presented connecting him to the crime.

{¶31} Mr. Taylor has not pointed to any authority that more than one eyewitness's testimony or DNA evidence is needed to meet the sufficiency standard. *See* App.R. 16(A)(7). In addition, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. This Court has already determined that Officer Walter's testimony recounting Mr. Knaff's statement was admissible as a dying declaration. Moreover, "an appellate court must consider all of the evidence presented by the State in evaluating the sufficiency of the evidence, even if the evidence was improperly admitted by the trial court." *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 22, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19.

**{¶32}** The State presented undisputed evidence that Mr. Knaff died as a result of three gunshot wounds. In addition, it presented evidence that Mr. Taylor was the individual who shot Mr. Knaff. Viewing the evidence most favorably to the prosecution, the State presented sufficient evidence to establish the elements of felonious assault and felony murder.

**{¶33}** As it pertains to the manifest weight of the evidence, Mr. Taylor questions what D.H.-B. actually saw given that she was on her phone when the first shot occurred. He claims that she "did not observe the shooting." She testified that, after hearing the first shot, she looked up and saw Mr. Taylor shooting Mr. Knaff. "[T]he jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993).

**{¶34}** Finally, Mr. Taylor attempts to discredit the State's investigation into the shooting. Mr. Taylor notes, for instance, that the bullets that were recovered at his mother's house were not compared to the bullets recovered at the Rosemary Apartments. He further notes that Mr. Knaff did not provide a last name or physical description of his assailant. D.H.-B., however, provided a description including that he had a cross tattoo on his forehead. Mr. Taylor contends that there were other men present who fit the description of the assailant, one of whom was apprehended and questioned. Detective Daniel Marks testified that the individual only matched the description in so much as he was a black male wearing a white t-shirt, but he did not have a tattoo on his forehead. The jury heard the testimony of the State's experts and detectives on direct and cross-examination and was free to believe the State's version of events over Mr. Taylor's version. This is not the exceptional case where the jury clearly lost its way in convicting Mr. Taylor.

**{¶35}** Mr. Taylor's second and third assignments of error are overruled.

III.

**{¶36}** Having overruled all of Mr. Taylor's assignments of error, this Court affirms the judgment of the Summit County Common Pleas Court.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.