[Cite as *State v. Evans*, 2023-Ohio-4838.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 22CA0081-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES A. EVANS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21CR0301 |

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

STEVENSON, Judge.

{¶1} Appellant, Charles A. Evans, appeals from his conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On November 9, 2020, Ohio State Highway Patrol ("OSHP") Trooper David Pangburn was in his patrol vehicle on Interstate I-71, facing northbound traffic, when he observed a speeding vehicle coming from the south. According to radar, the vehicle was traveling 90 mph in a 70-mph zone. Trooper Pangburn initiated a traffic stop of the vehicle. The validity of the stop is not at issue on appeal.

{¶3} Trooper Pangburn approached the passenger side of the vehicle and asked the driver for identification. There was one passenger in the vehicle, later identified as Mr. Evans. Trooper Pangburn observed visible tears on the driver's face and she mouthed "help." Trooper Pangburn

again asked for identification and the driver stated that it was in her purse in the trunk. Trooper Pangburn had the driver exit the vehicle and retrieve her purse from the trunk.

{¶4} After retrieving her purse, the driver went back to the driver's side of the vehicle and told Mr. Evans that Trooper Pangburn was requesting that she come with him. Trooper Pangburn and the driver walked to the front of the patrol vehicle and the driver produced her identification. The driver told Trooper Pangburn that she wanted to go home and that she wanted Mr. Evans removed from her vehicle.

{¶5} Trooper Pangburn asked the driver if there were any guns or drugs in the vehicle and the driver said no. Trooper Pangburn asked the driver if there was any marijuana in the vehicle and, before the driver could answer, Mr. Evans started yelling outside the window. Trooper Pangburn returned to the vehicle and Mr. Evans stated that the driver does not use marijuana, but he had smoked marijuana. The trooper explained to Mr. Evans that he saw raw marijuana on his shirt. At this time, Trooper Tara Chambers arrived on the scene to assist due to multiple occupants. The driver went with Trooper Chambers, who placed the driver in the rear of Trooper Pangburn's patrol vehicle.

{¶6} After returning to the suspect vehicle, Trooper Pangburn asked Mr. Evans to get out of the vehicle. Trooper Pangburn asked Mr. Evans for identification, and Mr. Evans responded that his identification was in the driver's bra. Trooper Pangburn had Mr. Evans stand at Trooper Chambers' vehicle and he returned to his patrol vehicle, where the driver produced Mr. Evans' identification.

{¶7} Mr. Evans stayed with Trooper Chambers while Trooper Pangburn conducted a probable cause search of the vehicle. The search of the vehicle is not at issue on appeal. Trooper

Pangburn observed marijuana shake on the passenger side of the vehicle and a white powdery substance in the glove box.

{¶8} Trooper Pangburn then searched the vehicle's trunk, where he found a blue duffel bag with Mr. Evans' name on it. A black scale, along with two white shoes with socks sticking out, were inside the duffle bag. When Trooper Pangburn removed one sock, he observed a large ball at the bottom of the sock. Trooper Pangburn looked inside the sock and saw that it contained a plastic bag with white powder inside. Trooper Pangburn placed the bag in the trunk and returned to the patrol vehicle.

{¶9} After returning to the patrol vehicle, Trooper Pangburn told Mr. Evans to turn around with his hands behind his back. Mr. Evans wanted to know why and Trooper Pangburn told him that he would explain after he placed handcuffs on him.

{¶10} As Trooper Pangburn tried to place handcuffs on Mr. Evans, Mr. Evans fled from the rear of the patrol vehicle and out into a lane of travel on I-71. Mr. Evans then ran to the front of Trooper Chambers' vehicle, pushing her to the side. Mr. Evans continued to run towards the front of the driver's vehicle. At this time, Trooper Pangburn tased Mr. Evans in the back and Mr. Evans fell. Mr. Evans quickly got up and started reaching into the vehicle's trunk, specifically into the blue duffle bag with his name on it, where he grabbed one shoe. Trooper Pangburn testified that he tased Mr. Evans two more times because Mr. Evans was not listening to the troopers' commands or their advisement to stop.

{¶11} At some point, before Trooper Pangburn advised Mr. Evans that he had located anything inside the vehicle, Mr. Evans removed the white shoes from the trunk saying, "It's hers. It's hers." Trooper Pangburn was unsure of what Mr. Evans was saying was "hers."

**{¶12}** Due to Mr. Evans' resistance, Trooper Pangburn radioed for assistance. With the help of a deputy and township officers, Mr. Evans was finally placed in handcuffs and in the rear of a patrol vehicle.

**{¶13}** After the scuffle, Trooper Pangburn placed the white powdery substance from the sock in a plastic bag, which was then sealed and sent to the OSHP crime lab to be weighed and tested. Trooper Pangburn testified that he received the results from the crime lab indicating that the substance was 63 grams of heroin.

**{¶14}** The driver testified that she met Mr. Evans in West Virginia, where she has lived all her life. On November 9, 2020, the driver was giving Mr. Evans a ride to Cleveland because he allegedly missed his Greyhound bus. Mr. Evans put his belongings in the trunk of her vehicle. The driver planned to head straight back to West Virginia after dropping-off Mr. Evans in Cleveland.

**{¶15}** The driver testified that Mr. Evans wanted her to speed but that, because she could not afford a ticket, she did not want to speed. Mr. Evans told the driver to slow down after seeing the police on the highway but, at that point, it was too late as she was already pulled over. According to the driver, Mr. Evans was in a rush. The driver no longer felt safe after she was pulled over. The driver wanted Mr. Evans and his belongings out of her vehicle and she wanted to go back to West Virginia.

**{¶16}** The driver testified that she did not have a pair of white men's shoes in her trunk before Mr. Evans put his stuff in the vehicle. The driver also testified that she did not put any drugs in the trunk of her vehicle and that she had no idea there were drugs in the vehicle, including the marijuana. The driver went straight home after the traffic stop.

**{¶17}** An employee in the drug chemistry section at the OSHP crime lab testified at trial. It is this employee's job to test for the presence or absence of controlled substances. The employee

testified that she ran two different gas chromatograph mass spectrometer ("GCMS") tests on State's exhibit 1-B, which was the knotted white plastic bag containing a powdery substance. The presence of heroin, a Schedule I controlled substance, was identified in State's exhibit 1-B. The weight of State's exhibit 1-B was 63.6390 grams.

{¶18} Mr. Evans was charged with possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e), a first-degree felony. Mr. Evans was arraigned, entered a not guilty plea, and the matter proceeded to a jury trial. The jury returned a guilty verdict to the sole charge and the trial court imposed an indefinite prison sentence consisting of a minimum of six years and a maximum of nine years, with credit for 579 days served.

{¶19} Mr. Evans appeals his convictions raising two assignments of error for this Court's review.

I.

**ASSIGNMENT OF ERROR NO. I**

**THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT OF GUILTY AS TO POSSESSION OF HEROIN.**

{¶20} Mr. Evans argues in his first assignment of error that his conviction was not based on sufficient evidence as a matter of law. For the reasons set forth below, this assignment of error is overruled.

{¶21} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390. "For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State." *State v. Zappa,* 9th Dist. Wayne No. 20AP0025,

2022-Ohio-243, ¶ 7, citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court does not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶22} Mr. Evans was found guilty of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e), which provides:

(A)     No person shall knowingly obtain, possess, or use a controlled
        substance or a controlled substance analog.

* * *

(C)     Whoever violates division (A) of this section is guilty of one of the
        following:

* * *

(6)     If the drug involved in the violation is heroin or a compound,
        mixture, preparation, or substance containing heroin, whoever
        violates division (A) of this section is guilty of possession of heroin.
        The penalty for the offense shall be determined as follows:

* * *

(e)     If the amount of the drug involved equals or exceeds five
        hundred unit doses but is less than one thousand unit doses
        or equals or exceeds fifty grams but is less than one hundred
        grams, possession of heroin is a felony of the first degree,
        and the court shall impose as a mandatory prison term a first
        degree felony mandatory prison term.

* * *

{¶23} According to R.C. 2901.22(B):

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person

subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

This Court has recognized that "[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances." *State v. Harper*, 9th Dist. Summit No. C.A. 19632, 2000 WL 327231, *2 (Mar. 29, 2000); *State v. Nieves*, 9th Dist. Lorain No. 03CA008385, 2004-Ohio-4334, ¶ 9.

{¶24} "Possess" or "possession" is defined in R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." This Court has repeatedly held that "'a person may knowingly possess a substance or object through either actual or constructive possession.'" *State v. See*, 9th Dist. Lorain No. 08CA009511, 2009–Ohio–2787, ¶ 10, quoting *State v. Hilton*, 9th Dist. Summit No. 21624, 2004–Ohio–1418, ¶ 16. "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Reis*, 9th Dist. Summit No. 26237, 2012–Ohio–2482, ¶ 7, quoting *State v. Kendall,* 9th Dist. Summit No. 25721, 2012–Ohio–1172, ¶ 14, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.

{¶25} This Court has also recognized that "[t]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011–Ohio–5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002–Ohio–5381, ¶ 30 (2d Dist.). "Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it." *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 11, citing R.C. 2925.01(K). "[C]onstructive possession [of drugs] may be inferred

from the drugs' presence in a usable form and in close proximity to the defendant." *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005–Ohio–1132, ¶ 8, citing *State v. Thomas*, 9th Dist. Summit No. 21251, 2003–Ohio–1479, ¶ 11. "Circumstantial evidence is itself sufficient to establish dominion and control over the controlled substance." *Hilton* at ¶ 16.

{¶26} The State presented testimony and evidence that, during the search of the vehicle and in addition to observing more raw marijuana shake, Trooper Pangburn observed a white powdery substance in the glove box. Trooper Pangburn then searched the vehicle's trunk where he found a duffle bag with Mr. Evans' name on it. Inside the bag was a black scale and two white shoes with socks sticking out. Trooper Pangburn discovered a plastic bag with a white power inside one of the socks. An employee in the drug chemistry section of the OSHP crime lab testified that the powder was determined to be 63.6390 grams of heroin. Trooper Pangburn also testified that before he advised Mr. Evans that he had located anything inside the vehicle or the duffle bag, Mr. Evans ran and removed the shoes from the trunk, stating "It's hers. It's hers." The vehicle's driver testified to Mr. Evans placing his belongings in the truck and that the white shoes in the trunk, which contained the sock with heroin, did not belong to her.

{¶27} Based on a thorough review of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all elements of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e) were established beyond a reasonable doubt. Assignment of error number one is overruled.

## ASSIGNMENT OF ERROR NO. II

**APPELLANT'S CONVICTION AS TO POSSESSION OF HEROIN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶28} Mr. Evans argues in his second assignment of error that his possession of heroin conviction was against the manifest weight of the evidence. For the reasons set forth below, this assignment of error is overruled.

{¶29} "When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis." *Zappa*, 9th Dist. Wayne No. 20AP9925, 2022-Ohio-243, at ¶ 17. To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶30} Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Mr. Evans. *See Otten* at 340. In addition to other testimony and evidence, the jury heard testimony that the duffel bag and white shoes that were inside the trunk, including the white sock that contained the heroin, belonged to Mr. Evans. The jury heard testimony that two different tests were run on the white powdery substance located in Mr. Evans' belongings and that the substance was 63.6390 grams of heroin. There was testimony that, before he was informed that anything was found inside the vehicle, Mr. Evans yelled "It's hers. It's hers."

{¶31} It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 57. *See also Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("the jury is free

to believe all, part, or none of the testimony of each witness.") This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15, quoting *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29.

**{¶32}** Upon our review of the entire record, we conclude that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Evans' possession of heroin conviction. *See Otten*, 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387. Mr. Evans' manifest weight of the evidence argument, as asserted in his second assignment of error, is overruled.

## III.

**{¶33}** For the reasons stated above, Mr. Evans' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

_____
SCOT STEVENSON
FOR THE COURT

 

SUTTON, P. J.
CARR, J.
CONCUR.

 

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE ZARANEC, Assistant Prosecuting Attorney, for Appellee.