[Cite as *State v. Jennings*, 2025-Ohio-727.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30726 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK JENNINGS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 21 03 0872 |

DECISION AND JOURNAL ENTRY

Dated: March 5, 2025

STEVENSON, Judge.

{¶1} Appellant, Patrick Jennings, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Jennings was charged with felonious assault in violation of R.C. 2903.11(A)(2), 2903.11(D)(1)(a), a felony of the second degree, and assault in violation of R.C. 2903.13(A), 2903.13(C), a misdemeanor of the first degree. The charges stemmed from events involving P.I. while at Mr. Jennings's residence. Mr. Jennings pleaded not guilty to the charges and the matter proceeded to a jury trial.

{¶3} P.I. testified to the following at trial: that long-time friend S.H. was giving her a ride home the evening of the incident. S.H. told P.I. that she had to make a quick stop on the way home that evening. P.I. later learned that they had stopped at Mr. Jennings's residence. P.I. did not know Mr. Jennings nor had she been to his residence prior to the assault.

**{¶4}** P.I. went into Mr. Jennings's residence with S.H. P.I. testified that Mr. Jennings was "a little wound up, but he didn't seem intimidating" when the women entered the residence. P.I. sat on a chair, later moving to a couch, and proceeded to look at and talk on her phone. P.I. did not pay attention or otherwise notice what S.H. and Mr. Jennings were doing. She did not see either S.H. or Mr. Jennings take drugs, smoke, drink, or remove clothing.

**{¶5}** At some point, P.I. saw S.H. and Mr. Jennings go down the hallway and into a back area of the residence. S.H. and Mr. Jennings were only in the back area for a minute or so. Mr. Jennings became "belligerent beyond understanding" after he and S.H. came back into the living room area. P.I. did not know why Mr. Jennings was mad or "what transpired to make him this mad."

**{¶6}** P.I. testified that Mr. Jennings then proceeded to come at her "with like a red, crazy look in his face." P.I. decided that she had to "get[] out of [t]here" and she proceeded to stand up. P.I. testified that Mr. Jennings pushed her back down, "snatched [her] purse and . . . flung it[,]" and struck her in the head with a sword when she again tried to get up from the couch. P.I. testified that the sword "just came down, and [Mr. Jennings] just sliced my head open." When asked how certain she was that Mr. Jennings is the one that hit her on the head, P.I. testified that she is "a hundred percent sure it was him."

**{¶7}** With blood dripping down her clothes, P.I. "charged [Mr. Jennings] with everything I had in me." P.I. testified that Mr. Jennings continued to beat her, fighting her all over the living room and punching her in the face and head. According to P.I., Mr. Jennings was also kicking S.H. in the fight. P.I. lost a hair piece that was glued to her head in the struggle.

**{¶8}** P.I. eventually reached her purse where she kept a taser. P.I. was able to get out of the residence after tasing Mr. Jennings.

{¶9} P.I. ran and hid in a neighbor's bushes because she thought "[Mr. Jennings] was going to kill me. He already just tried to kill me." P.I. "was terrified" when she called 911 from the bushes. P.I. repeatedly informed the 911 operator that "he cut [her] with a knife," "he stabbed me," and "he stabbed me in my head." P.I. testified that S.H. ran away from the scene.

{¶10} P.I. had to get 12 staples on the top of her head because of the cut from the sword. P.I. testified that she has a scar from this injury.

{¶11} In addition to P.I., responding Officers Devin Lane, Thomas Shoemaker, and Davon Fields testified at trial. Officer Lane testified that Mr. Jennings was standing outside the residence when he arrived at the scene and that Mr. Jennings had blood on his sweater. Officer Lane also observed "a lady with injury to her head." Upon entering Mr. Jennings's residence, Officer Lane observed "blood on the couch."

{¶12} Officer Shoemaker similarly testified that he observed Mr. Jennings "walking outside with a bloody sweater[]" when he arrived at the scene. Office Shoemaker observed blood on the couch, floor, wall, door, clothing, and shoes inside of the residence. Officer Shoemaker found the sword in Mr. Jennings's kitchen.

{¶13} Officer Fields testified that he spoke to P.I. when he arrived at the scene and that P.I. told him Mr. Jennings had "attacked [her] with the sword on top of - - hitting her on top of the head." When asked whether P.I. had given him "any indication that anyone other than [Mr. Jennings] had attacked her[,]" Officer Fields testified that "[n]o, she did not."

{¶14} Emily Feldenkris, a forensic scientist in the DNA section for the Ohio Bureau of Criminal Investigation, also testified. Ms. Feldenkris performed two DNA analyses on Mr. Jennings's sword. Ms. Feldenkris testified that P.I.'s DNA profile is on the blade of the sword and that the swab taken from the sword's handle "was not suitable for comparison purposes due to

insufficient data." Ms. Feldenkris explained that she did not have enough DNA markers from the sword's handle that were suitable for her to generate statistics for comparison. Although there is not enough DNA present in the sword's handle for Ms. Feldenkris "to make comparisons to," she can tell that male DNA is present in that sample. Ms. Feldenkris cannot exclude Mr. Jennings as a DNA contributor on the sword's handle. S.H. did not testify at trial.

{¶15} Mr. Jennings did not testify at trial. Mr. Jennings called Ryan Mize, the City of Akron Firefighter who evaluated P.I. and prepared the EMS run report. Mr. Jennings questioned Mr. Mize about the EMS run report, which states that P.I. was attacked by a "female." Mr. Mize testified that "[t]here [were] a lot of cops" at the scene and he described P.I. as "anxious[.]" Mr. Mize acknowledged on cross-examination that he is taking down a lot of information when doing his report, that a lot of things are going on, and that "[m]istakes can always occur."

{¶16} A jury found Mr. Jennings guilty of felonious assault and not guilty of assault. The trial court accepted the jury's findings and sentenced Mr. Jennings to six to nine years in prison. Mr. Jennings appeals his conviction raising two assignments of error for this Court's review.

I.

**ASSIGNMENT OF ERROR NUMBER ONE**

**APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT, IN VIOLATION OF SECTION 2903.11(A)(2)(D)(1)(a) OF THE OHIO REVISED CODE, IS UNCONSTITUTIONAL AS THE CONVICTION IS BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION[.]**

{¶17} Mr. Jennings argues in his first assignment of error that his conviction was not based upon sufficient evidence as a matter of law, in violation of his Federal and Ohio Constitutional rights. We disagree.

{¶18} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact." *State v. Taylor*, 2018-Ohio-2921, ¶ 27 (9th Dist.).

{¶19} Mr. Jennings was convicted of felonious assault in violation of R.C. 2903.11(A)(2). The statute prohibits "knowingly . . . caus[ing] or attempt[ing] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, or designed or specifically adopted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1) and R.C. 2923.11(A).

{¶20} Mr. Jennings argues that P.I.'s testimony was inconsistent and that there are too many unknowns "about the time leading up to the actual assault, who committed the actual assault and what occurred after." He points out that a key witness, S.H., did not testify at trial and that she refused to submit her DNA. According to Mr. Jennings, "[w]hat is reasonable here is that these

women [P.I. and S.H.] planned to rob [him][.]" The State argues that the record contains sufficient evidence to support the felonious assault conviction.

{¶21} As it pertains to sufficiency of the evidence, Mr. Jennings does not dispute that P.I. sustained a cut on the head from a sword at his house. P.I. testified she is "a hundred percent sure" that Mr. Jennings is the one that struck her on the top of the head with the sword. The responding officers observed P.I.'s injuries, blood on Mr. Jennings's sweater and inside his residence, and they found the sword inside Mr. Jennings's kitchen. The testimony of Ms. Feldenkris, the forensic scientist that performed the DNA analysis on the sword, confirmed that P.I.'s DNA is on the sword. Ms. Feldenkris testified that male DNA is on the sword's handle and she cannot exclude Mr. Jennings as a DNA contributor on the sword's handle. Mr. Jennings does not dispute this evidence exists; he just claims it is not sufficiently credible to support his conviction. As this Court does not assess credibility while reviewing a claim for sufficiency of the evidence, his argument must fail.

{¶22} Viewing the evidence in a light most favorable to the prosecution, and upon a thorough examination of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all elements of felonious assault in violation of R.C. 2903.11(A)(2) were established beyond a reasonable doubt. Assignment of error number one is overruled.

### ASSIGNMENT OF ERROR NUMBER TWO

**APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT, IN VIOLATION OF SECTION 2903.11(A)(2)(D)(1)(a) OF THE OHIO REVISED CODE, IS UNCONSTITUTIONAL AS THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION[.]**

{¶23} Mr. Jennings argues in his second assignment of error that his conviction was against the manifest weight of the evidence, in violation of his Federal and Ohio Constitutional rights. We disagree.

{¶24} "'When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis.'" *State v. Evans*, 2023-Ohio-4838, ¶ 29 (9th Dist.), quoting *State v. Zappa*, 2022-Ohio-243, ¶ 17 (9th Dist.). To evaluate the weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *Evans* at ¶ 29, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶25} Mr. Jennings argues that P.I.'s testimony was not credible or consistent and that P.I.'s claims "should not be enough to convince a reasonable person to rely upon it in the most important of their affairs." The State asserts that credibility issues are within the purview of the jury and that Mr. Jennings's conviction should not be overturned "because the jury chose to believe the testimony offered by the prosecution."

{¶26} Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Mr. Jennings of felonious assault. *See Otten* at 340. As previously set forth, R.C. 2903.11(A)(2) prohibits "knowingly . . . caus[ing] or attempt[ing] to cause physical harm to another . . . by means of a deadly weapon . . . ." There is no dispute that P.I. sustained a cut on her head from a sword. P.I. testified that she is "a hundred percent sure" that

Mr. Jennings is the one that struck her on the head with the sword. The officers testified that they observed blood on Mr. Jennings's sweater and inside his residence. The officers found the sword in Mr. Jennings's kitchen. Ms. Feldenkris, the forensic scientist, testified that P.I.'s blood is on the sword's blade and she cannot exclude Mr. Jennings from being a DNA contributor on the sword's handle. While Mr. Jennings produced Mr. Mize who prepared the report that P.I. claimed she was cut by a "female," that report is inconsistent with all of P.I's other statements the day of the offense and her trial testimony. Also, Mr. Mize acknowledged many things were going on as he was taking down his notes and mistakes do occur.

{¶27} This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.). Upon our review of the entire record, we conclude that Mr. Jennings has not shown that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Jennings's felonious assault conviction. *See Otten*, 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387. Mr. Jennings's manifest weight of the evidence argument, as asserted in his second assignment of error, is overruled.

### III.

{¶28} For the reasons stated above, Mr. Jennings's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.